IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN ARMSTRONG, | ) | CASE NO. 1:18CV1133 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN LYNEAL WAINWRIGHT, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Shawn Armstrong ("Petitioner" or "Armstrong") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Armstrong is detained at the Marion Correctional Institution, having pleaded guilty in the Cuyahoga County, Ohio, Court of Common Pleas to one count of trafficking in heroin and one count of criminal simulation. *State v. Armstrong*, Case No. CR-14-586710-A (Cuyahoga Cty. Common Pleas Ct., filed January 12, 2015). At sentencing, the trial court sentenced him to seven years for trafficking and four months for criminal simulation, to run concurrently, for an aggregate prison sentence of seven years. Doc. 11-1, p. 29.

On April 30, 2018, Armstrong filed his Petition for Writ of Habeas Corpus setting forth nine grounds for relief. Doc. 1, pp. 5-10; Doc. 1-1. Also pending are his Motion for Summary Judgment (Doc. 15), Motion for Evidentiary Hearing (Doc. 4), and Motion for Expert Witness(s) (Doc. 5). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Armstrong's grounds are not cognizable and/or fail on the merits and his motions lack merit. Thus, the undersigned recommends that Armstrong's Petition for Writ of Habeas Corpus and his Motion for Summary Judgment be **DENIED**. His motions for an evidentiary hearing and expert witnesses are **DENIED**.

1

# I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

## A.  State Court Action

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:

{¶ 3} The Cuyahoga County Grand Jury returned a four-count indictment, charging Armstrong with trafficking heroin in excess of 50 grams but less than 250 grams, drug possession of heroin in excess of 50 grams but less than 250 grams, possession of criminal tools, and criminal simulation. All of the counts, except for the criminal simulation count, had a forfeiture specification attached. The charges arose from a large amount of heroin and some counterfeit money found in Armstrong's car after it was stopped on Interstate 77 for not displaying a front license plate.

{¶ 4} On January 12, 2015, Armstrong entered into a plea agreement. He agreed to plead guilty to the drug trafficking charge and forfeiture specification and the criminal simulation charge. The remaining counts were nolled. Sentencing was continued so that a presentence investigation report ("PSI") could be completed.

{¶ 5} Three days after entering his plea, Armstrong filed several motions, all related to his allegation he was a "freeman" or sovereign citizen who is not governed by the laws of the state. These motions included an "Affidavit of Mistake" arguing that he was wrongly indicted and received by mistake correspondence and documents from the court addressed to "Shawn Armstrong." He contended that he was not that person, but was "Shawn of the Armstrong Family." He filed a motion to remove counsel in which he stated he terminated his counsel and attached a "Truth Affidavit" appointing "Shawn of the Armstrong Family" as his attorney. He also filed a pro se motion to withdraw his plea arguing that he was a "freeman" who was not subject to the jurisdiction of the court.

{¶ 6} On February 13, 2015, a sentencing hearing was conducted where the trial court questioned Armstrong about the motion to withdraw his plea. The court noted that between the time of the plea and sentencing, Armstrong had become a "freeman" and that his arguments related to being a sovereign citizen were not recognized under state or federal law. The trial court denied Armstrong's motion to withdraw his plea after concluding that the plea was voluntarily, knowingly, and intelligently entered. The court also concluded that Armstrong was claiming to be a sovereign citizen to "weasel your way out of this" and that Armstrong was having a change of heart.

{¶ 7} Armstrong proceeded to act in a disruptive manner by not allowing the trial court to speak and constantly requesting that the trial court prove it had jurisdiction over him and to prove the trial judge took the "oath of office." The trial court eventually had Armstrong handcuffed and when he would not stop being disruptive, removed him from the courtroom and placed him in a holding cell where he could hear the sentencing via video. In response, Armstrong placed his hands over his ears. The trial court sentenced Armstrong to a total of seven years in prison.

*Armstrong*, 2016 WL 5193075, at *1.

### B. Direct Appeal

On March 11, 2015, Armstrong, pro se, timely filed a notice of appeal to the Ohio Court of Appeals.  Doc. 11-1, p. 31.  The Ohio Court of Appeals, *sua sponte*, dismissed his appeal because he failed to file the record.  Doc. 11-1, p. 53.

### C. Delayed Direct Appeal

On June 1, 2015, Armstrong, pro se, filed a notice of appeal and a motion for leave to file a delayed appeal in the Ohio Court of Appeals.  Doc. 11-1, pp. 54, 65.  The court granted Armstrong leave to file a delayed appeal.  Doc. 11-1, p. 71.  Armstrong, pro se, filed a merits brief raising 17 assignments of error:

1. Trial court abused its discretion when it denied Appellant's pre-trial Motion to Withdraw His Guilty Plea violating his constitutional rights of the U.S. Constitution, Amendments and Ohio Constitution, Article I, Section 10 and right to a fair and impartial trial, right to due process of law, and right to confront and cross examine and equal protection of law.

2. Defense counsel was ineffective for surprisingly withdrawing appellant's winnable Motion to Suppress violating his constitutional rights to confrontation and cross examination, due process of law, effective counsel, equal protection of law and right to a fair and impartial trial.

3. State's Prosecutor engaged in misconduct when he knowingly, intelligently and willfully altered the Incident Location on, complaint and bill of particulars to obtain an indictment and ultimately a conviction violating Appellant's constitutional rights to a fair and impartial trial, in the jurisdiction where-in the crime is alleged to have taken place.

4. Trial court abused its discretion by refusing and ignoring Appellant's challenges that it was lacking jurisdiction violating Crim.R. 12(C)(2) and his constitutional rights to due

3

process of law, equal protection of law, cruel and unusual punishment and [] right to a fair and impartial trial within the district where-in the alleged crime is to have taken place.

5. Defense counsel was ineffective for refusing to withdraw nor raise or adopt any of Appellant's valid defenses after Appellant expressed his strong desires for his removal violating Appellant's right to effective assistance of counsel and self representation.

6. Defense counsel was ineffective when he refused to challenge any of the State's prima faci[e] evidence – prosecutor's complaint, bill of particulars, indictment, video of traffic stop, dog sniffing, test of alleged drugs, jurisdiction, no Miranda warning, stop and arrest by Brecksville officer on Interstate highway violating his constitutional right to effective counsel and due process.

7. State's Prosecutor engaged in misconduct when it submitted tampered evidence to a County Grand Jury in the form of video of Appellant's initial traffic stop, thereby violating his constitutional right to due process of law and equal protection of law, cruel and unusual punishment.

8. Trial court abused its discretion and erred when it stopped Appellant's suppression hearing and summoned counselors into his chambers, where in the judge influenced defense counsel into withdrawing Appellant's Motion to Suppress, violating his constitutional rights to confront and cross examine, due process, cruel and unusual punishment, equal protection of the law and right to a fair and impartial trial.

9. Trial court abused its discretion and erred by denying Appellant his right to self-representation and effective counsel, violating his constitutional rights to due process, effective counsel, fair and impartial trial, and equal protection of the law.

10. Trial court abused its discretion and erred by intimidating, violently threatening, handcuffing and arresting Appellant and placing him in a holding cell, ex-communicating him from the court without any allocution pursuant to Crim.R. 43 nor any advisement of his appellate rights, violating his constitutional rights to due process, cruel and unusual punishment, and equal protection of the law.

11. Trial court abused its discretion and erred by denying Appellant's motions for a new trial, summary judgment and set aside verdict without issuing any findings of fact or conclusions of law nor any evidentiary hearings, violating Appellant's due process of law and equal protection of the law.

12. Appellant was denied due process of law along with equal protection of law when Prosecuting Attorney engaged in criminal acts of dishonesty, fraud, deceit, misrepresentation of the facts, thereby Defendant was prejudiced beyond repair to his constitutional rights to a fair and impartial tr[i]al.

13. Appellant was denied effective assistance of counsel when counsel pressured Appellant to take a guilty plea, by which had counsel did his due diligence Appellant would have never knowingly, voluntarily and intelligently plead guilty.

14. Trial court abused its discretion and erred by never finding Appellant guilty of any offense that he was charged with, yet still sentencing Appellant to 7 years of state incarceration without any finding of guilt, violating his due process of law and equal protection of the law.

15. Trial court abused its discretion and erred by sentencing Appellant without any calculations from the pre-sentence report, nor stating specific reasons for the sentence imposed, violating his constitutional right to due process and equal protection of law and fair and impartial trial along with cruel and unusual punishment.

16. Trial court abused its discretion when it refused to respond to Appellant's Affidavit to dismiss indictment ignoring Appellant's valid motion without granting an evidentiary hearing, violating Appellant's due process of law and equal protection of law.

17. Trial court abused its discretion by engaging in a sham legal process committing fraud upon the court when it verified the identity and conviction of Appellant based solely on evidence obtained by virtue of officers illegal stop, arrest and search and seizure on Interstate Highway 77, thereby violating Appellant's State of Ohio Constitutional rights under Article I, Section 14 and United States Constitutional Amendment IV, rights to due process and equal protection of law and cruel and unusual punishment.

Doc. 11-1, pp. 73-86.  The Ohio Court of Appeals again dismissed Armstrong's appeal for failing to file the record.  Doc. 11-1, p. 112.  Armstrong filed a motion for reconsideration, which the court granted, and, sua sponte, appointed counsel for Armstrong.  Doc. 11-1, p. 122.  In a merits brief filed by appointed counsel, Armstrong raised the following assignments of error:

1. The Appellant was denied of his right to act as his own counsel in violation of both state and federal law.

2. Appellant was deprived of his right to a trial when the trial court refused to allow him to withdraw his plea prior to sentencing.

3. The Appellant's constitutional right to effective assistance of counsel was violated when such counsel abandoned a viable motion to suppress evidence.

4. The trial [court] erred when it denied Appellant's Motion to Withdraw his guilty plea without first determining the extent of an alleged psychiatric disorder and the effect it may have had on his ability to understand the consequences of his change of plea.

Doc. 11-1, p. 125.  The state filed a brief in opposition and Armstrong, through counsel, filed a

reply brief.  Doc. 11-1, pp. 150, 172.  The Ohio Court of Appeals, sua sponte, accepted

Armstrong's pro se brief for review and permitted the state to file a response, which it did, and

Armstrong to file a reply, which he did, pro se.  Doc. 11-1, pp. 190, 192, 230.

On April 21, 2016, the Ohio Court of Appeals overruled all of the assignments of error in

both Armstrong's briefs and affirmed the judgment of the trial court.  Doc. 11-1, pp. 234-261.

Armstrong, pro se, filed three post-judgment motions with the Ohio Court of Appeals, which the

it denied.  Doc. 11-1, pp. 266, 279, 281, 285, 286, 288.

On September 29, 2016, Armstrong, pro se, filed a notice of appeal in the Ohio Supreme

Court.  Doc. 11-1, p. 289.  In his memorandum in support of jurisdiction, Armstrong set forth the

following twelve propositions of law:

> 1. Appeal Court of the 8th District Abused its Discretion & Erred when it refused to
> Answer Appellants challenges to the trial courts Lack of Subject Matter & Territorial
> Jurisdiction in violation of his IV, V, VI, & XIV am. of the U.S. Const. & Ohio Const.
> art. I sect. 10&14 & art. XViii sect. 3.
>
> 2. Trial Abused its Discretion by failing to conduct the Mandatory Faretta Hearing.
>
> 3. Trial Court abused its Discretion when it abandoned its Mandatory Inquiry Into known
> Conflict with Terminated Counsel.
>
> 4. The Prosecuting Attorney Deprived Appellant of his Substantial Due Process & Equal
> Protection of Law when He Maliciously Prosecuted Appellant by Committing Multiple
> Brady Violations.
>
> 5. Appellant was Deprived of Effective Assistance of Counsel when Retained Counsel
> refused to Withdraw after termination, Positioning Appellant under the Prohibition
> against Hybrid – Counsel, For Surprisingly With-drawing viable Motion to Suppress,
> failing to challenge custodial statements obtained absent Miranda Warning, failing to
> challenge the Legality of Dog Sniff, Extra-territorial stop and arrest, Probable Cause
> Arrest warrant, the []Authenticity of Video, Failing to hold a Franks Hearing, failing to
> know the facts and Case Law, Coercing Appellant into Guilty Plea without doing any
> Investigation, Depriving Appellant of His Right to Self- Representation.
>
> 6. Appellant was De[]prived of His IV, XIV am of U.S. Const. & Ohio Const. art. I sect.
> 14 & art. XViii sect.3 when He was stopped & Arrested on the Inter-State Highway

6

System U.S.C.S. 23 sect.101 by a Municipal police Officer outside of His Statutory Jurisdiction.

7. The Trial Court Abused its Discreti[o]n & erred when it Deprived Appellant an Evidentiary Hearing on His Timely Pro-se Pre-trial Motion to Dismiss Indictment, nor a full and fair hearing on his demand to withdraw Guilty Pleas, Appeal court Erred by not Addressing this Error, Depriving Appellant of His Due Process, right to a Fair trial, Equal Protection of the Law.

8. Trial Court Abused its Discretion & Erred when it Influence Defense Counsel to Withdraw Appellants viable Motion to Suppress Evidence by Conducting an Off the Record in Chamber Conference, violating Appellants Due Process and Equal Protection of the Law an Effective Counsel and a Fair and Impartial trial.

9. The Appeal Court Abused its Discretion & Erred when it ruled that the Police can delay a traffic Stop without any Probable Cause, Articulable Suspicion due to Appellants prior Criminal History, Depriving Appellant of His Constitutional right Not to be subjected to Unreasonable Searches and seizures, Right to Travel Freely on the Inter-State Highway system, Due Process & Equal Protection of the Law.

10. Appellant was Deprived of His Due Process & Equal Protection of the Law when the arresting Officer Knowingly Altered the Incident Location to Deceptively obtain Jurisdiction.

11. The Trial Court Abused its Discretion & Erred by Perpetrating a Fraud on the Court when it Knowingly conducting a Sham Legal Process absent any Jurisdiction Depriving Appellant of His Life, Liberty, & Property without Due Process and Equal Protection of Law.

12. Appellant was Deprived of His IV am of the U.S. Const. when the Municipal Judge Authorized a Warrantless Search Warrant outside of His Statutory Jurisdiction absent Probable Caus[]e or Affidavit charging the Arrest.

Doc. 11-1, pp. 293-294.  On March 15, 2017, the Ohio Supreme Court declined to accept jurisdiction of his appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 11-1, p. 360.  Armstrong filed a motion for reconsideration, which was denied.  Doc. 11-1, pp. 361, 366.

### D. Post-Conviction Filings

Meanwhile, in March 2015, Armstrong, pro se, filed four post-conviction actions in the state trial court, Doc. 11-1, pp. 367-376, which were all denied, Doc. 11-, pp. 384-389. Armstrong did not appeal any of the trial court's decisions denying his actions.

**E. Petitions to Vacate or Set Aside Judgment of Conviction or Sentence**

On September 7, 2016, while his direct appeal was pending, Armstrong, pro se, filed a

petition to vacate or set aside judgment of conviction or sentence in the trial court.  Doc. 11-1, p.

390.  In his petition, he set forth the following claims:

> 1. Petitioner was willfully deprived of Ohio Const. art. I Sect. 10 & U.S. Const. Am. VI.
> Location of incident was outside the jurisdiction of Cuyahoga County—trial court was
> absent subject-matter jurisdiction.

> 2. deprivation of U.S. Constitution amendment for 6 & 14 and Ohio constitution article 1
> section 10 & 14 and Ohio 10, constitution 18 art. 3. defendant was not awarded probable
> cause determination ineffective assistance counsel nor hearings on motions to dismiss;
> coram non-judice.

Doc. 11-1, pp. 391-392.  On September 14, 2016, the trial court denied Armstrong's petition as

untimely and, alternatively, held that Armstrong's claims were barred by the doctrine of res

judicata.  Doc. 11-1, p. 420.

Armstrong appealed to the Ohio Court of Appeals, which denied his appeal as untimely.

Doc. 11-1, p. 431.  Armstrong did not file an appeal to the Ohio Supreme Court.

On February 9, 2017, Armstrong, pro se, filed a second petition to vacate or set aside

judgment of conviction or sentence in the trial court.  Doc. 11-1, p. 432.  He raised the following

claim:

> 1. Trial Court was Unambiguously & Patentl[y] Absent of any Jurisdicti[]on i.e. Subject-
> Matter/Territorial nor Personal. The Prosecuting Attorney Complaint was not signed nor
> Notarized and was Lacking as to the Specific facts of the Actual Location. . . .

Doc. 11-1, pp. 433-434.  On February 24, 2017, the trial court denied Armstrong's petition for

post-conviction relief as untimely and, alternatively, held that Armstrong's claim was barred by

the doctrine of res judicata.  Doc. 11-1, p. 521.  On March 27, 2017, Armstrong, pro se, filed a

notice of appeal to the Ohio Court of Appeals.  Doc. 11-1, p. 533.  The Ohio Court of Appeals

dismissed his appeal, sua sponte, because he failed to file a brief.  Doc. 11-1, p. 541.  Armstrong

did not appeal to the Ohio Supreme Court.

### F. Motion for Summary Judgment

On March 3, 2017, Armstrong, pro se, filed a motion for summary judgment in the trial

court, arguing that his sentence should be set aside because the trial court lacked personal

jurisdiction over him and subject matter jurisdiction over his case.  Doc. 11-1, p. 522.  The trial

court denied his motion for summary judgment.  Doc. 11-1, p. 532.

### G. State Petition for a Writ of Mandamus/Habeas Corpus

On February 16, 2017, Armstrong's wife, proceeding pro se, filed a petition for a writ of

habeas corpus/mandamus in the Ohio Supreme Court.  Doc. 11-1, pp. 542-548.  Respondent filed

a motion to dismiss.  Doc. 11-1, pp. 651-664.  The Ohio Supreme Court, "[u]pon consideration

of respondent's motion to dismiss," granted Respondent's motion and dismissed Armstrong's

petition.  Doc. 11-1, p. 665.

### H. Federal Habeas Petition

On April 30, 2018, Armstrong, pro se, filed his Petition for a Writ of Habeas Corpus.

Doc. 1.   He listed the following grounds for relief:

> **Ground One**: The trial court knowingly acted in absence of any jurisdiction of the
> subject-matter. Ohio Crim.R 3 –complaint governs how a trial court properly acquires
> jurisdiction over the subject-matter, the trial court failed to enforce the state law and rule
> and did not base their decision on the procedural rule.
>
> IV & V 14th amendment of the US. Constitution governs the petitioner's claim by which
> the State has acted contrary to well established Federal Laws.
>
> **Ground Two**: The Petitioner was Convicted in an Improper Venue, Acquired by and
> through Fraud and Deception by knowingly altering the Jurisdiction of the Location
> where the Crime is alleged to have occurred.
>
> The State Law: R.C. 2901.12; R.C. 2921.32; R.C. 4513.39(A)(B)(1); governs Petitioner's
> Claim by which the State failed to enforce the State Rule and did not base their Decision
> on these Procedural Laws.

The Federal Law: am. IV; VI & XIV of U.S. Const. governs Petitioner's Claim by which the State has acted contrary to well established Federal Laws.

**Ground Three**: The Trial Court denied Petitioner his Right to Self-Representation by Flagrantly failing to Conduct and Inquiry into Petitioner's known desire to Defend Himself, without Counsel.

The State Law: Crim R. 22 & 44, governs Petitioner's Claim by which the State has failed to enforce and did not base their Decision on the Procedural Rules & Laws.

The Federal Law: am. VI, VIII & XIV of U.S. Const. & Faretta Hearing, governs Petitioner's Claim by which the State has acted contrary to well established Federal Laws.

**Ground Four**: Trial court willfully and recklessly violated the Petitioner's right to counsel of choice, self-representation, right to present a defense, confrontational clause, right to a fair and impartial trial by positioning Petitioner behind the prohibition of hybrid-representation creating a severely substantive conflict of interest with the terminated attorney.

State law: R.C.2921.32 governs the petitioner's claim by which the State failed to enforce and did not base its decision on these procedural rules.

Federal Laws V, VI, and XIV amendments of the U.S. Constitution and governs the Petitioner's claim by which the State has acted contrary to well established federal laws.

**Ground Five**: The Trial Court Willfully, Wantonly & Recklessly violated Petitioner's Due Process Rights to a Full & Fair Suppression Hearing, Confrontational Clause & Right To Be Free From a Bias & Prejudicial Judge

The State Law: R.C. 2701.03, Crim. R. 22, 43(A) governs Petitioner's Claim by these Procedural Laws.

The Federal Law: U.S. Const. am IV-V-VI & VIV governs Petitioner's Claim by which the State Court has acted contrary to clearly established Federal Laws.

**Ground Six**: The trial court violated the petitioner's procedural and substantial due process by failing to hold a fair evidentiary hearing for the Petitioner's pro-se motion to withdraw guilty plea and dismiss for a improper venue where the alleged crime occurred.

The State law Crim. R. 32.1 Crim. R.12(F) governs the Petitioner's claim that the State has failed to enforce and did not base their decision on procedural law.

The Federal law amendments V, VI, and XIV of the U.S. Constitution governs the Petitioner's claim by which the State has acted contrary to well established federal law.

**Ground Seven**: Prosecutor Maliciously Initiated a Criminal Prosecution based on Fabricated Documents, False Testimony & Evidence Absent any Probable Cause Outside of his Jurisdictional Authority, ultimately depriving Petitioner of his right to Self-Representation.

The State Law: R.C. 2913.42, R.C.4513.39 (A)(B)(1), DR 2 – 110 (1) – (2). DR 7 – 102(A)(4)(5)(6), Oh. Prof. R. of Conduct 1.16(a)(3),Local Cuyahoga County Rule 10(B) governs the Petitioner's Claim that the State failed to enforce and did not based their Decisions on these Procedural Laws.

The Federal Law: am. IV-V-VI & XIV of the U.S. Const. Governs Petitioner's Claim by which the State has acted contrary to these well established Federal Laws.

**Ground Eight**: The trial counsel was ineffective by withdrawing motion to suppress at the demand of the trial judge.

The State law, Ohio Constitution Art. 1 Sect. 14 and 16 governs the Petitioner's claim by which the State has failed to enforce and did not base their decision on a procedural law.

The Federal laws, amendments IV, V, VI, and XIV of the U.S. Constitution governs the Petitioner's claim by which the State has acted contrary to well established federal laws.

**Ground Nine**: The Trial Counsel was Ineffective by failing to Withdraw Representation after being Terminated, Willfully Obstructing the Petitioner's Path to Self-Representation and Due-Process, while in Collusion with the State to Position the Petitioner behind the Prohibition against Hybrid-Representation at the Sentencing Hearing.

The State Law: Oh. Prof. R. Of Conduct: 1.16(a)(3), 1.7(B)(2), 8.4, DR 2-110(A)(1)(2), DR 2-110(B)(4), Cuyahoga County Court of Common Pleas Local Rule 10(B), governs the Petitioner's Claim by which the State has failed to enforce and did not base their Decision On.

The Federal Law: am. V, VI, VIII& XIV of the U.S. Const. Governs the Petitioner's Claim by which the State has acted Contrary to these well-established Federal Laws.

Doc. 1, pp. 5-10, Doc. 1-1 to 1-8.  On September 4, 2018, Respondent filed a Return of Writ

(Doc. 11) and, on October 22, 2018, Armstrong filed a Traverse (Doc. 13), and, on November

26, 2018, a Motion for Summary Judgment (Doc. 15).[1]

## II. Standard of Review under AEDPA

---

[1] Also pending before the Court are Armstrong's Motion for Evidentiary Hearing (Doc. 4) and Motion for Expert Witness (Doc. 5), discussed below, and a Motion for Appointment of Counsel (Doc. 6), Motion for Release from State Custody (Doc. 7), and Motion to Clarify (Doc. 9), which the undersigned resolves in a separate order.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must

12

present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501

U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.** In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002);

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A. Grounds 1 and 2 are not cognizable and fail on the merits

In Grounds 1 and 2, Armstrong argues that the trial court lacked subject matter jurisdiction and that venue was improper.  Doc. 1, pp. 5, 7; Docs. 1-1, 1-2.  He contends that the location of the alleged crime was altered to fraudulently obtain jurisdiction and that the complaint did not comply with Ohio Criminal Rule 3.  Docs. 1-1, 1-2.

These claims are not cognizable because subject matter jurisdiction, venue, and compliance with Ohio rules are all issues of state law and, therefore, are not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam) ("A determination of

15

whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."); *Jones v. Hooks*, 2017 WL 4236525, at *28 (N.D.Ohio Aug. 23, 2017) (venue not cognizable, citing *Caudill v. Scott*, 857 F.2d 344, 345 (6th Cir. 1988) and *Williams v. United States*, 582 F.2d 1039 (6th Cir. 1978)); *Washington v. Morgan*, 2014 WL 5465845, at *2 (N.D. Ohio Oct. 28, 2014) (subject matter jurisdiction not cognizable, citing *Kincaid v. Klee*, 2013 WL 3817357, at *2 (E.D.Mich. July 23, 2013) and *Wills v. Egeler*, 532 F.2d 1058 (6th Cir. 1976)); *Callahan v. Eppinger*, 2018 WL 5260110, at *1 (N.D.Ohio Oct. 30, 2018) (sufficiency of indictment or other charging document to confer jurisdiction upon state trial court is not cognizable, citing *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994), *Hill v. Ludwick*, 2011 WL 5244824, at *5 (E.D.Mich. Nov. 3, 2011)); *Kelley v. Brunsman*, 625 F.Supp.2d 586, 598 (S.D.Ohio 2009) (alleged state court non-compliance with Ohio rules of criminal procedure is not cognizable).

Moreover, Armstrong's argument that he was not tried in a court of proper jurisdiction or venue fails on the merits.  He asserts that various documents were altered to show that the Brecksville Police stopped his car on I-77 at Oakes Road but that other documents reveal that Armstrong's car was actually stopped on I-77 and the Ohio Turnpike, in another municipality (Richfield) and in another county (Summit).  See, e.g., Doc. 1-2, Doc. 14, pp. 20-21.  But the Brecksville Police Officer who stopped Armstrong's car testified that the officer was sitting on I-77 near Oakes Road when the officer saw Armstrong's car drive by with a front license plate improperly displayed and pulled out onto I-77 and followed Armstrong's car for a short time before pulling Armstrong's car over on the I-77 ramp to the Ohio Turnpike.  Doc. 11-2, pp. 9-12. In other words, Armstrong and the police officer agree that Armstrong was pulled over on the I-77 ramp to the Ohio Turnpike.  Armstrong has filed documents purporting to show that this area is in Richfield, Ohio, and not Brecksville, Ohio, but his filings do not show that the area he was

16

pulled over is in Richfield rather than Brecksville.[2]  Thus, he has not presented clear and convincing evidence that the Ohio Court of Appeals' factual determination—that he was pulled over on I-77 in Brecksville—is incorrect.  *See* 28 U.S.C. § 2254(e)(1).

### B. Grounds 3 and 4 fail on the merits

In Grounds 3 and 4, Armstrong argues that the trial court denied his right to self-representation and his right to counsel of choice.  Doc. 1, pp. 8, 10; Doc. 1-3; Doc. 1-4.  The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense.  U.S. CONST. AMEND. VI.  A defendant may proceed without counsel if he voluntarily and intelligently waives his right to counsel.  *Faretta v. California*, 422 U.S. 806, 807 (1975).  For a waiver of the right to counsel and invocation of the right of self-representation to be valid, two conditions must be satisfied.  First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Second, a defendant's self-representation request must be made clearly and unequivocally.  *Raulerson v. Wainwright*, 469 U.S. 966, 969-970 (1984).

The Ohio Court of Appeals considered this claim:

*Right to Self–Representation*

{¶ 8} In his first assigned error, Armstrong argues the trial court denied him his right to self-representation.

{¶ 9} Criminal defendants enjoy the constitutional right to self-representation at trial provided that the right to counsel is knowingly, voluntarily, and intelligently waived after

---

[2] Armstrong filed a Willow Freeway (*aka* I-77) "Route Location Study" dated 1961, before the I-77 ramp to the Ohio Turnpike was built.  Doc. 4-6.  His "Google Map Willow Freeway" is not clearly marked and, in any event, appears to show that the I-77 ramp leading to the Ohio Turnpike is within Brecksville's municipal limits.  Doc. 15-11.  His Ohio Turnpike Mile Marker map is not clearly marked and, in any event, is irrelevant because Armstrong was not pulled over on the Ohio Turnpike, he was pulled over on the I-77 ramp leading to the Ohio Turnpike.

sufficient inquiry by the trial court. *State v. Johnson*, 112 Ohio St.3d 210, 2006–Ohio–6404, 858 N.E.2d 1144, ¶ 89. "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error." *State v. Cassano*, 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81, ¶ 32, citing *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996); *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The invocation of the right to self-representation must be "clear and unequivocal." *Cassano* at ¶ 38. It must also be timely made; self-representation may be properly denied when requested in close proximity to trial or under circumstances indicating that the request is made for purposes of delay or manipulation. *State v. Vrabel*, 99 Ohio St.3d 184, 2003–Ohio–3193, 790 N.E.2d 303, ¶ 50.

{¶ 10} Armstrong did not unequivocally or timely assert his right to self-representation. Armstrong filed a "notice of removal of counsel" three days after he pleaded guilty. In the notice, Armstrong stated that his retained counsel was "terminated in representing any and all legal matters concerning the Estate of Shawn Armstrong." He gave no reason for the termination but stated that pursuant to "Administrative maritime claim rules c(6)" he designated "Shawn of the Armstrong Family" as his "agent with power of attorney." This argument was based upon Armstrong's claim that he was a "freeman."

{¶ 11} The Second District, relying on federal case law, stated that arguments based on sovereign citizenship should be rejected, explaining as follows:

> [Beliefs of sovereign citizens] involve the alleged corporate status of Ohio and the United States; the relationship between the yellow fringe on the United States flag and admiralty jurisdiction; and the effect of capitalizing the letters of his name. Plaintiff ultimately maintains that he does not have a contract with either Ohio or the United States and, therefore, does not have to follow government laws. * * * [F]ederal courts have routinely recognized that such theories are meritless and worthy of little discussion. *See, e.g., People of the Republic United States ex rel. Goldsmith v. Schreier*, No. CIV. 124155, 2012 U.S. Dist. LEXIS 131987, 2012 WL 4088858, at *4 (D.S.D. Sept.17, 2012) ("Other courts have noted the sovereign citizen theory has been consistently rejected."); *United States v. Amir*, No. 1:10CR439, 2010 U.S. Dist. LEXIS 131503, 2010 WL 5014451, at *1 (rejecting as frivolous Defendant's argument that he was a "private natural man and real person" and therefore not subject to the laws of the United States); *United States v. Ward*, 182 F.3d 930 [published in full-text format at 1999 U.S.App. LEXIS 9255], 1999 WL 369812, at *2 (9th Cir.1999) (table) (rejecting sovereign citizen argument as frivolous and undeserving of "extended argument"); *Eidson v. Burrage*, 113 F. App'x 860, 862 (10th Cir.2004) (holding that a plaintiff's "yellow fringe flag" arguments were "indisputably meritless").

*State v. Few*, 2d Dist. Montgomery No. 25969, 2015–Ohio–2292, ¶ 6, quoting *Dubose v. Kasich*, S.D.Ohio No. 2:11–CV–00071, 2013 U.S. Dist. LEXIS 6086, 2013 WL 164506 (Jan. 15, 2013). *See also State v. Thigpen*, 8th Dist. Cuyahoga No. 99841, 2014–Ohio–207, ¶ 39; *State ex rel. Robinson v. O'Donnell*, 10th Dist. Franklin No. 15AP–225, 2015–Ohio–3987.

{¶ 12} Because courts have consistently rejected arguments based on sovereign citizenship and deemed them frivolous, Armstrong's notice was not an unequivocal request for self-representation. Even if the notice was deemed to be a clear request for self-representation, the notice, which was filed three days after the plea was entered, was not timely. Additionally, three days prior to filing the notice, Armstrong had represented to the trial court that he was satisfied with his counsel. The right to self-representation cannot be used as a delay tactic. *State v. Vrabel*, 99 Ohio St.3d 184, 2003–Ohio–3193, 790 N.E.2d 303, ¶ 50. Armstrong gave no indication that he held the beliefs attributed to sovereign citizens at his plea. Therefore, we agree with the trial court's determination that Armstrong was raising these arguments for the purpose of delay.

{¶ 13} At the sentencing hearing, Armstrong stated as follows regarding his attorney's representations:

> "[W]ith the representation of Mr. Warren, I've been—I had to forego all my rights. And I am a constitutional human being, a freeman on the land. I am not a corporation.
>
> And so with that said, Your Honor, I have proof right here that this is a corporation that we're dealing with, and I am the power of attorney over that corporation, sir. And according to U.S.C. United States Code 1603, it states that I am a corporation.

Tr. 51. As we stated above, the espousement of the freeman philosophy is not an unequivocal request to self-representation.

{¶ 14} Armstrong did later raise arguments at his hearing that he did not believe his counsel was zealously representing him because he failed to challenge the authenticity of the traffic stop video and withdrew his motion to suppress. As we will discuss in Armstrong's third assigned error, the trial court concluded that there was no merit to these allegations. Accordingly, Armstrong's first assigned error is overruled.

*Armstrong*, 2016 WL 1593075, at *2-3.

Armstrong argues that he filed a notice terminating his retained counsel and that this is proof he expressly waived his right to counsel.  Doc. 14, p. 27; Doc. 11-1, pp. 18-21 (notice).  But his notice does not state that he wanted to represent himself, only that he was terminating current counsel.  Moreover, as the Ohio Court of Appeals explained, his notice stated that he had terminated counsel "in representing any and all legal matters concerning the Estate of Shawn Armstrong" and was made pursuant to maritime law, i.e., his notice was related to his assertion that he was a "freeman," which courts have deemed frivolous.  *Armstrong*, 2016 WL 1593075, at

*2-3.  The Ohio Court of Appeals also explained that his request was untimely because it was filed three days after he pleaded guilty.  *Id.*; *see Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) ("[A] defendant may forfeit his self-representation right if he does not assert it 'in a timely manner.'" quoting *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 162 (2000)).  The Ohio Court of Appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.  Grounds 3 and 4 fail on the merits.

### C. Ground 5 fails on the merits

In Ground 5, Armstrong argues that the trial court violated his due process rights when it failed to hold a fair suppression hearing.  Doc. 1-5; Doc. 14, p. 32.  He asserts that the trial court stopped the suppression hearing, summoned counsel into chambers, and forced Armstrong's counsel to withdraw the suppression motion.  Doc. 1-5, pp. 1-2.

Armstrong is precluded from raising this claim because he knowingly and voluntarily pleaded guilty.  As the Supreme Court has explained,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012); *see also Class v. United States*, — U.S. —, 138 S.Ct. 798, 805 (2018) ("A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered" citing *Haring v. Prosise*, 462 U.S. 306, 320 (1983) as "holding a valid guilty plea 'results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of

20

Case: 1:18-cv-01133-JZ  Doc #: 18  Filed: 12/20/18  21 of 31.  PageID #: 1198

evidence obtained in violation of the Fourth Amendment'"). Accordingly, after a defendant unconditionally pleads guilty, "the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth*, 692 F.3d at 495 (citing *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012)). In Ground 5, Armstrong is not challenging the court's jurisdiction or the voluntariness of his plea; he is alleging trial court bias. Thus, he is precluded from raising these claims regarding his suppression motion. *See Ferguson*, 669 F.3d at 763 (unconditional plea prevents a defendant from challenging the court's denial of his motion to suppress); Doc. 11-2, p. 45 (transcript of Armstrong's guilty plea wherein he stated that he understood pleading guilty would waive his rights regarding his suppression motion).

### D. Ground 6 is not cognizable and fails on the merits

In Ground 6, Armstrong argues that the trial court violated his due process rights when it failed to hold a fair evidentiary hearing on his pro se motion to withdraw his guilty plea.[3] Doc. 1-6, p. 1. This claim is not cognizable because a defendant's right to an evidentiary hearing on a motion to withdraw guilty plea is an issue of state law; there is no constitutional right to a hearing on a motion to withdraw a guilty plea. *See Nicholson v. Larose*, 2015 WL 1757898, at *3 (N.D.Oh. April 17, 2015) (collecting cases); *Hines v. Miller*, 318 F.3d 157, 162 (2nd Cir. 2003) ("[A] defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea.").

Moreover, this claim fails on the merits. Ohio law provides that a trial court hold a hearing on a pre-sentence motion to withdraw guilty plea. *State v. Xie*, 584 N.E.2d 715 (Ohio 1992). Here, the trial court held a hearing on Armstrong's motion to withdraw his plea. *Armstrong*, 2016 WL 1593075, at *3-4; Doc. 11-2, pp. 51-61. A trial court is not required to hold a full evidentiary hearing on a motion to withdraw a guilty plea. *See State v. Johnson*, 79

---

[3] Armstrong's assertion that he was denied a fair evidentiary hearing on his motion to dismiss for improper venue (Doc. 1-6, p. 1) fails for the reasons explained in the undersigned's discussion of Grounds 1 and 2, *supra*.

N.E.3d 1202, 1207 (Oh. Ct. App. 2016) (observing that precedent indicates that a trial court is
not required to hold a separate evidentiary hearing on a presentence motion to withdraw a guilty
plea); *State v. Roark*, 2000 WL 1299548, at *2 (Sept. 14, 2000) ("*Xie* does not require that a full
evidentiary hearing be held in all cases .... the scope of a hearing on [a] motion to withdraw [a]
guilty plea should reflect the substantive merits of the motion. .... Bold assertions without
evidentiary support simply should not merit the type of scrutiny that substantial allegations
would merit.") (internal citations omitted).  Armstrong stated that he wanted to withdraw his plea
because he was a "freeman" and a "corporation"; the Ohio Court of Appeals found that these
assertions did not require further investigation.  *Armstrong*, 2016 1593075, at *4.  Armstrong
also asserted an unsubstantiated statement that the video of the police officer's stop was altered;
the Ohio Court of Appeals found that this assertion did not require further investigation.  *Id.*; *see
also Roark*, 2000 WL 1299548, at *2 ("Bold assertions without evidentiary support simply
should not merit the type of scrutiny that substantial allegations would merit." quoting *State v.
Smith*, 1992 WL 369273, at *5 (Oh. Ct. App. Dec. 10, 1992)).  The Ohio Court of Appeals'
findings were not unreasonable.  Ground 6 is not cognizable and fails on the merits.

### E. Ground 7 fails on the merits

In Ground 7, Armstrong argues that the prosecutor maliciously initiated the case against
him based on fabricated documents, testimony, and evidence, had no jurisdictional authority, and
deprived Armstrong of his right to self-representation when he continued to send items to
Armstrong's counsel even though Armstrong had filed a notice that he had terminated his
counsel.[4]  Doc. 1-7, p. 1.  His claim that the prosecutor behaved inappropriately by sending items

---

[4]  Respondent asserts that Grounds 1, 2, 5, 7 and 8 are barred because Armstrong pleaded guilty and waived these
claims.  Doc. 11, p. 23.  But in Grounds 1, 2 and 7, Armstrong is challenging the state court's jurisdiction, which is
an exception to the rule that a guilty plea precludes a petitioner from later challenging these issues.  *See Werth*, 692
F.3d at 495 (a defendant "may challenge only the court's jurisdiction and the voluntary and intelligent character of
the plea itself.").

to counsel fails because the trial court did not approve Armstrong's attempt to remove his attorney.  His claim that documents that were used to bring charges against him (such as the complaint and affidavit) were fabricated is based on his reasoning set forth in support of Grounds 1 and 2, supra: namely, that the time of his stop was incorrect, the location of his stop was incorrect, the duration of his stop was too long, and the video evidence was not consistent with the officer's testimony and summary police reports.  Doc. 1-7, pp. 1-4; Doc. 14, pp. 37-42.

To understand the factual basis for the Ohio Court of Appeals' decision regarding the propriety of Armstrong's traffic stop and arguments, the undersigned begins by reproducing the Ohio Court of Appeals' discussion regarding Armstrong's ineffective assistance of counsel claim:

{¶ 25} Armstrong argues that if his counsel allowed the suppression hearing to be completed, the evidence would have shown that the officer unlawfully detained him in order to wait for the K–9 unit to respond. "Even without a reasonable suspicion of drug-related activity, a lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior." *State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014–Ohio–2763, ¶ 23; *State v. White*, 8th Dist. Cuyahoga No. 100624, 2014–Ohio–4202. A detention justified by issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that process. "[A]n officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes." *State v. Brown*, 183 Ohio App.3d 337, 2009–Ohio–3804, 916 N.E.2d 1138, ¶ 23 (6th Dist.).

{¶ 26} Our review of the partial suppression hearing shows that the detention was due to the officer waiting for back-up to arrive because of dispatch's advising the officer of Armstrong's violent past history. The officer was alerted that Armstrong had prior convictions for aggravated murder, murder, aggravated robbery, and drug trafficking. According to the officer, Brecksville officers are trained to immediately respond as back-up when a person with a violent history is stopped.

{¶ 27} Armstrong's history, along with Armstrong's contradictory statements were the reasons the officer waited for back-up to arrive. Armstrong had informed the officer that he was on his way from Columbus to Warren to visit his mother. However, the officer noted that traveling south on Interstate 77 would not be the travel path from Columbus to Warren. Armstrong also told the officer that the handicap tag on the car belonged to his mother who lived with him in Columbus. However, he told the officer that he was on his way to visit his mother at her house in Warren. The car was also registered to a female. Under these circumstances, the officer stated he was not sure whether the car was stolen.

{¶ 28} "When detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning." *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12. Further, "[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id*. Further, "[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Cook*, 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70 (1992). Here, due to the facts that unfolded after the officer stopped Armstrong's vehicle, the duration of the stop was not unreasonable.

{¶ 29} Moreover, because the duration of the stop was an issue presented at the motion to suppress, the officer, while watching the video at court, testified that the video showed that Armstrong was stopped at 1501:28. Dispatch informed the officer of Armstrong's priors at 1514:26 and back-up was on the scene seconds later at 1515:00. Because the actual video was not presented as part of the appellate record, we have to rely on the officer's testimony regarding the time the events occurred. Based on the officer's testimony, the K–9 officer arrived within 15 minutes of the stop. Subsequently, the dog sniffed the exterior of the vehicle and alerted to drugs. This was not an unreasonable amount of time.

{¶ 30} We conclude that counsel's advising Armstrong to enter into a plea after the video of the traffic stop was played at the suppression hearing was based on trial strategy. The trial court also stated at the sentencing hearing that it viewed a video of the stop and found that it was lawful. Counsel was not required to pursue a motion to suppress if doing so would be a futile act. *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980); *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015–Ohio–1550, ¶ 28.

*Armstrong*, 2016 WL 1593075, at *5-6.  The Ohio Court of Appeals then considered

Armstrong's prosecutorial misconduct claim, the claim he now raises in Ground 7:

*Prosecutorial Misconduct*

{¶ 38} We will address Armstrong's third, seventh, twelfth, sixteenth, and seventeenth pro se assigned errors together because they all contend that the prosecutor engaged in misconduct.

{¶ 39} When reviewing a claim of prosecutorial misconduct, this court's task is to determine whether the comments and questions by the prosecution were improper and, if so, whether they prejudiced the appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480,739 N.E.2d 749 (2001). After reviewing the assigned errors, we conclude that the prosecutor did not engage in misconduct.

{¶ 40} Armstrong contends that the prosecutor altered the indictment and bill of particulars by changing the location of the stop. Specifically, he contends that the stop occurred on Interstate 77, yet the prosecutor states in the indictment and the bill of particulars that the location was "I–77 and Oakes Road." He contends he was never on Oakes Road and that the prosecutor included "Oakes Road" because the Brecksville officer would not have jurisdiction to stop him on Interstate 77 because the interstate is solely within the jurisdiction of the state troopers.

{¶ 41} The fact that the stop occurred on Interstate 77 did not prevent the Brecksville officer from having jurisdiction to stop Armstrong. Armstrong was stopped on the section of the interstate that was within Brecksville's jurisdiction. Pursuant to R.C. 4513.39(A), the state highway patrol has exclusive jurisdiction to make arrests, "except within municipal corporations and except as specified in division (B) of this section * * *." The Ohio Supreme Court has interpreted this statute to mean that "a township officer has no authority to stop motorists for any of the offenses, enumerated in that statute, which have been committed on a state highway outside municipal corporations." Here, Armstrong was stopped on the section of Interstate 77, which was within the boundaries of Brecksville, Ohio. Therefore, the addition of "Oakes Road" in the indictment and bill of particulars did not alter the outcome of Armstrong's convictions.

{¶ 42} Armstrong also contends that the prosecutor submitted a tampered video to the grand jury. We have no evidence of what was presented to the Grand Jury. Because such evidence is outside the record, we cannot review this claim on direct appeal. *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015–Ohio–4694, ¶ 91.

{¶ 43} Armstrong also contends that the video shown at the suppression hearing was tampered with in order to shorten the length of the stop. Armstrong failed to provide a copy of the video as part of the appellate record. In the absence of a complete record, this court must presume regularity in the trial court's proceedings and accept its judgment. *State v. West*, 8th Dist. Cuyahoga Nos. 97398 and 97899, 2012–Ohio–6138, ¶ 25. The trial court at the sentencing hearing addressed Armstrong's claim that the video was tampered with and stated:

> [G]iven the fact that the court did witness during the suppression hearing the traffic stop in this matter, the court saw nothing in that video that would show the court that it was—is any way doctored or photo shopped or in any way altered.

Tr. 85.

Thus, given the court's findings on this issue, we conclude that there was no evidence that the video had been tampered with.

{¶ 44} Based on our above discussion, we conclude that the trial court did not err by refusing to dismiss the indictment and that the prosecutor did not engage in misconduct. Accordingly, Armstrong's third, seventh, twelfth, sixteenth, and seventeenth assigned errors are overruled

*Armstrong,* 2016 WL 1593075, at *7-8.

Armstrong does not demonstrate that the Ohio Court of Appeals' factual findings or legal determinations were unreasonable.  28 U.S.C. § 2254(d).  He complains that the video footage time is approximately two minutes later than the times listed in the police reports (Doc. 1-7, p. 3; Doc. 14, p. 39), but the officer explained at the suppression hearing that the video time is a few minutes off screen log time (Doc. 11-2, pp. 14-15).  Either way, the point is that Armstrong was pulled over on I-77 in Brecksville and had to wait no more than 15 minutes for police backup to arrive, backup that was necessary due to Armstrong's prior violent criminal history (which he does not dispute).  His assertion that various police documents refer to I-77 and Snowville Road or Oakes Road (Doc. 14, pp. 37-38) is immaterial; he was stopped on I-77 in Brecksville.[5]

Ground 7 fails on the merits.

### F. Ground 8 fails on the merits

In Ground 8, Armstrong argues that trial counsel was ineffective for withdrawing the motion to suppress "at the demand of the trial court."  Doc. 1-8, p. 1; Doc. 14, p. 43.  For the same reasons explained in Ground 5, Armstrong is precluded from bringing this claim because he pleaded guilty, foreclosing ineffective assistance of counsel claims that do not relate to the voluntariness of his plea.  *See Tollett*, 411 U.S. at 267; *Werth*, 692 F.3d at 495; *Tighe v. Gidley*, 2017 WL 5301481, at *3 (6th Cir. Oct. 25, 2017) (habeas petitioner's ineffective assistance of counsel claim meritless when petitioner fails to link it to the alleged voluntariness of his plea, citing *U.S. v. Stiger*, 20 Fed. App'x 307, 308-309 (6th Cir. 2001) (ineffective assistance of counsel claim not related to the voluntariness of the plea is waived by guilty plea)); *Johnson v. Davis*, 2010 WL 4940003, at *5 (E.D. Mich. Nov. 30, 2010) (citing *Smith v. Estelle*, 711 F.2d

---

[5]  Moreover, according to Armstrong's own map (Doc. 11-1, p. 456), the portions of I-77 and Oakes Road or Snowville Road are in Brecksville and do not show that the Brecksville police pulled him over in an area outside their jurisdiction and fabricated evidence.

677, 682 (5th Cir. 1983)).  Here, Armstrong does not allege that counsel's alleged ineffectiveness rendered his guilty plea involuntary.

To the extent Armstrong's ineffective assistance of counsel claim could be construed generously as an attack on the voluntariness of his plea, it fails on the merits.  Armstrong's basis for his motion to suppress was that the officer who stopped him did not have reason to detain him after the initial stop (Doc. 11-2, pp. 5-6).  But as the Ohio Court of Appeals explained, the police officer testified that Armstrong had prior convictions for aggravated murder, murder, aggravated robbery, and drug trafficking, necessitating back-up; Armstrong had been contradictory about who owned the car he was driving and where he was going; and the back-up officer arrived promptly, within 15 minutes of the initial stop.  Armstrong does not show that the Ohio Court of Appeals' determination that his motion to suppress was futile and counsel was not ineffective for failing to pursue it, *Armstrong*, 2016 WL 1593075 at *6, is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### G. Ground 9 fails on the merits

In Ground 9, Armstrong argues that trial counsel was ineffective by failing to withdraw when Armstrong terminated him after he pleaded guilty, thereby "willfully obstructing [Armstrong's] path to self-representation ... at the sentencing hearing."  Doc. 1-8, p. 2; Doc. 14, p. 46.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.  A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on his appeal.  *Id*., at 687-691, 694.  Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeals'

decision on the merits of that claim, under AEDPA.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th

Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190

(2011)).

> The Ohio Court of Appeals considered Armstrong's claim:
>
> {¶ 23} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.
>
> {¶ 24} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.
>
> &ast;  &ast;  &ast;
>
> {¶ 49} Armstrong also contends that his counsel should have stopped representing him after Armstrong terminated him three days after the guilty plea was entered. As we held in Armstrong's first assigned error filed by counsel, Armstrong did not unequivocally or timely assert his right to self-representation. Accordingly, this argument is moot.

*Armstrong*, 2016 WL 1593075, at *5, 9.  Armstrong does not show that the Ohio Court of

Appeals' legal or factual determinations were incorrect or unreasonable.  Ground 9 fails on the

merits.

### IV. Motions for Evidentiary Hearing and Expert Witness

Armstrong filed a Motion for Evidentiary Hearing (Doc. 4) and a Motion for Expert

Witness(s) (Doc. 5).  He requests an evidentiary hearing "to clarify and establish the material and

factual Location of the City and County of the alleged offense, wherein the crime is known to

have occurred[.]"  Doc. 4, p. 1.  The crux of his argument is that he was pulled over by the

Brecksville Police on Interstate 77 and the Ohio Turnpike, which, he states, is outside the

jurisdiction of the Brecksville Police and Cuyahoga County, and that documents were falsified to

that effect.  Doc. 4, pp. 2-3.  Relatedly, he requests the following experts be appointed and paid for by the Court to prove his claim: individuals from the Cuyahoga County Engineer's Office and the Ohio Turnpike Commissioner's Office.  Doc. 5, p. 1.  He asserts that the documents in his possession show that the stop occurred in Richfield, in Summit County, and not Brecksville, in Cuyahoga County.  Doc. 5, p. 3 (citing a "Google Map of the Willow Freeway" and an Ohio Turnpike Mile Marker Map).  Doc. 5, p. 3.

To be entitled to an evidentiary hearing in a federal habeas case, a petitioner must satisfy the requirements of 28 U.S.C. § 2254(e)(2).  *Cullen v. Pinholster*, 563 U.S. 183-185 (2011) (indicating that "Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing" and "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief").  Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>> (A) the claim relies on--
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A petitioner fails to develop the factual basis of a claim by not diligently pursuing it in state court.  *Williams*, 529 U.S. at 436-437.

Armstrong failed to develop the factual basis for his claim in state court.  He filed two post-conviction petitions requesting an evidentiary hearing (Doc. 11-1, pp. 391-392, 433-435), but the trial court denied them and Armstrong did not appeal.  Section 2254(e)(2)(A) is not met because there is no new rule of law that applies to his claim and the factual predicate could have

been, and was, previously discovered by Armstrong.[6]  Finally, as described above, Armstrong's evidence does not show that he was pulled over outside the jurisdiction of the Brecksville Police. Accordingly, Armstrong is not entitled to an evidentiary hearing.

### V. Armstrong's Motion for Summary Judgment

On November 26, 2018, Armstrong filed a Motion for Summary Judgment.  Doc. 15.  In it, he presents the same arguments that he presented in his Petition: the prosecutor fabricated evidence and the trial court lacked jurisdiction over him.  He relies on the same evidence he cited in other filings, e.g., Brecksville police reports, a map of I-77, a "Willow Freeway-Route Location Study," an Ohio Turnpike Mile Marker document, and an invoice from the garage that towed his car.  He asserts he is entitled to judgment as a matter of law because there is no genuine issue of material fact that the trial court did not have jurisdiction.  Doc. 15-1, p. 10.  For all the reasons explained above, Armstrong's arguments are without merit and his Motion for Summary Judgment (Doc. 15) should be denied.

---

[6]  Although Armstrong challenged the trial court's subject matter jurisdiction prior to sentencing, the basis for that challenge was that he was a "freeman" and the trial court was illegally trying him under admiralty law.  Doc. 11-2, pp. 68-69; Doc. 11-1, pp. 11-13.  He asserted a claim that he was stopped outside the jurisdiction of the Brecksville Police on direct appeal (Doc. 11-1, p. 92-93), but the basis for that claim was prosecutorial misconduct (Doc. 11-1, pp. 92-93).  In any event, a direct appeal is not the proper vehicle for requesting an evidentiary hearing.  *See State v. Hill*, 740 N.E.2d 282, 284 (Ohio 2001); *State v. Ishmail*, 377 N.E.2d 500 (Ohio 1978).

### VI. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Armstrong's habeas

Petition (Doc. 1) and Motion for Summary Judgment (Doc. 15) be **DENIED**.  His Motion for

Evidentiary Hearing and related Motion for Expert Witness(s) (Docs. 4, 5) are **DENIED**.

Dated: December 20, 2018                    */s/ Kathleen B. Burke*
                                            _____
                                            Kathleen B. Burke
                                            United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).